Peter Clark for Charles Corey on behalf of Arthur Bussiere. This is a single-issue case. There were only two potential defenses in this case. One was the defendant's position, as evidenced by his testimony, that it was all an accident, which was largely unbelievable and unbelieved by the jury. The second potential defense was a mental defense, whether he was able to form specific intent in the course of this homicide. This is perhaps the most extreme case I've seen of evidence supporting ineffective assistance of counsel. We have four separate instances presented first at the appellate court at the State level and then subsequently at each level above that. Well, counsel may or may not have been deficient in failing to pursue it. But what I would appreciate your explaining is why there is any prejudice, because the defendant at the time testified himself that he intentionally drew his knife in order to scare Palmer. So you have intent. He appeared to be amply with it enough to discuss the plan to get marijuana with Palmer. He went and he bought the marijuana. He figured out how to make a $5 profit on the transaction. He delivered the stuff to Palmer. He argued with him when Palmer was unhappy with the quality. And he pulled his knife intentionally to brandish it and intimidate Palmer. And he remembered the whole thing afterwards. And witnesses testified that he didn't appear to be all that drunk. So how could any of this have made any difference? First, all this depends on the defendant's testimony given some years after the event. The difficulty is, my experience as a defense counsel when I did a lot of this, is that people find themselves in situations in which they find it necessary to explain whether they have an explanation or not. And the real question here was did he even remember all those things? We don't know that. We don't know that. We do know. We do know. But he testified under oath. Correct. And he was obviously lying. The jury disbelieved him. Well, the question for us isn't whether a better or different defense strategy could have been obtained. The question for us is whether the decision of the California Court of Appeal finding that there was no prejudice from the failure to raise this defense, we have to decide whether that was an unreasonable analysis, not whether there's a different possible analysis. So why is that unreasonable? The difficulty here is that everything that the Court is talking about is almost completely determined from the defendant's testimony. And, in fact, as defense counsel, if my client had indicated this is what I want to testify to, and short of his telling me and I'm going to lie so that I've got to withdraw from that case, then I must allow him to give that testimony. But if, in addition to that, I know that there is reason to believe that this person has mental defect and probably may not even have remembered what he testified to, and on top of that may have had a substantial defense on the subject of intent, then it is also my requirement to not only put together the medical evidence. In this case, we have the evidence from four individuals who indicate that there were substantial problems. And on top of that, I think we even have some evidence. See, the difficulty is the Court below decided all this from the record, not from the allegations in the habeas corpus. And here, even in the record, we have some indications of some very strange activity on the part of the defendant, the kicking and screaming and all that sort of thing. So the difficulty here is we really had two separate defenses, both of which trial counsel had a responsibility to present. What defendant wanted to testify to, which, of course, was totally unbelievable. Do you think that would have helped to have two inconsistent defenses with the totally unbelievable defendant? Yes. Yes, I think so. Juries have a lot more capability than many people are willing to grant them. I think that a jury could have easily heard this. So do state appellate courts. Pardon me? So do state appellate courts. Yes, and federal courts also. I think the difficulty here is we didn't give them the opportunity. There were things they needed to hear. They needed to hear this long history of intoxication. They needed to hear what impact that would have on the person's ability to form an intent. They needed to hear the impact that that would have on what this person might be doing, quite aside from what he might want to testify to. It is natural that anybody who wants to testify to some story, that's going to exonerate them completely, as unbelievable as it might be. Here we have two separate. I mean, the first, I think the thing that bothered me most is we have the first trial counsel with, I think she had 11 years of experience, who needed to have this expert appointed, and the appointment was denied. We have trial counsel themselves that indicated the lack of this was not due to any tactical reason. We have the testimony of a medical expert who indicated the substantial possibility that this would have changed the outcome, and then we have the investigator. We have four separate individuals testifying as to things that should have been done. And although I agree with the court's hesitance that it is difficult for a jury to hear two totally inconsistent approaches, one, the defendant who says, I remember everything. This was a very detailed plan. Obviously, given the circumstances of what the defendant testified to, of course there could be specific intent. He testified to too much. But if we hear the other side, the medical evidence, that he probably didn't remember any of this. I mean, after all, we have a victim here, I think, in the record, who came onto the scene later and had a blood alcohol of 0.22. We have a group of people whose total existence is drinking. I think a jury could easily consider those. Now, can I say for certainty the jury would have decided that there was no specific intent? Of course I can't. But is there a very substantial possibility that they might have, given this background of this case? I'd say of course there is. Is it difficult to square the total inconsistency with what the defendant testified to and what the medical experts may have testified to? Of course there's a total inconsistency, and it is difficult. But nonetheless, it should have happened. It didn't happen here. In other words, what I'm saying is we didn't have a fair result here. The jury didn't hear, not only didn't hear half of the evidence, didn't hear probably the most important and only potential defense in this case. Okay. Thank you, Mr. Clark. Mr. Mulford. Good morning. Deputy Attorney General Matthew Mulford for Appelli. May it please the Court. Just two points. Judge Reimer, first, I think you're correct. The California Court of Appeal properly evaluated the issue of prejudice under the Strickland analysis for any failure to present the voluntary intoxication offense, because that would have, in fact, conflicted with Mr. Busieri's very clear and detailed testimony. Second, Judge Graber, you're also correct that even if we disagree with the Court's analysis under 2254D, we're stuck with that because it's a reasonable call based upon this appellate record. In 1990, at the time Mr. Busieri killed Mr. Palmer, voluntary intoxication was relevant to second-degree murder, only to the extent that it would reduce his mental capacity. And that mental capacity could have been found two separate ways. Either he had a specific intent to kill, or he acted consciously with a conscious disregard for life and safety. Under either version, Mr. Busieri's testimony squarely comports with both of those mental states, and an intoxication offense would be inconsistent with what he said. We know this because we can look at the reasons that were relied on by the District Court of Appeal in California and the District Court below, which was all that evidence of planning that Judge Graber, or excuse me, Judge Reimer, you mentioned. We can also look at the record of Mr. Busieri's testimony, where there is nearly a complete absence of things you might expect to see for someone who was intoxicated. Things like I blacked out, things I can't remember, things like I was so drunk I don't know what I was doing that day. Mr. Busieri was very clear. I don't think any of us in this courtroom can look at Mr. Busieri's testimony and assume that he lied about what he was doing. We need to accept the fact that his testimony is as true as he believed it. That's how it's presented. That's how the jury needs to accept it. Because of that, the defense attorney here really couldn't undermine his client's testimony. He could not come up in front of the court and say, look, I know what Mr. Busieri has told you, you can't believe him because he's unbelievable. That would clearly undermine their entire credibility in front of the jury. I'd like to invite the court's attention specifically to pages 62 and 63 of our supplemental excerpts, where Mr. Busieri was cross-examined by the prosecutor and asked specifically, and then you stabbed him and you killed him. I pushed him is the answer. I subsequently stabbed him when I pushed him. And the next page is 63. But you knew you stabbed him. I was pretty sure of it. You knew it. I was pretty sure of it, sir. I believe so. Mr. Busieri knew what he was doing, and intoxication would not have mattered. Based on this record and in light of the United States Supreme Court's decisions regarding ineffective assistance to counsel, most recently the Gentry case, that is a reasonable interpretation of the evidence in the record, and it must be affirmed. Okay. Thank you. Mr. Clark? Again, I think there's much more potential in terms of a jury contemplating an inconsistent defense. We do that all the time. We allow the defendant to testify. In this case, the jury believed he was lying. And we're picking and choosing among what he did or did not lie about, and I just don't think that's a fair result. All right. We appreciate your argument. And the matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber